
FILED
NOV 18 2021
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: COUNCIL ON AMERICAN ISLAMIC RELATIONS, OHIO, | : : : | Miscellaneous Docket No. 1:21MC 80 |
| | : | JUDGE JUDGE ADAMS |
| Subpoenaed Non-Party. | : : | MAGISTRATE JUDGE _____ |

## NON-PARTY CAIR-OHIO'S MOTION TO QUASH DEFENDANT'S SUBPOENA *DUCES TECUM*

Non-party Council on American Islamic Relations, Ohio ("CAIR-Ohio"), by and through undersigned counsel, hereby moves, pursuant to Fed.R.Civ.P. 45(d)(3)(A);(B), to quash the subpoena *duces tecum* served by Asma Lori Haidri Saroya ("Saroya"), the defendant in the underlying action, pending in the United States District Court for Minnesota, *CAIR Foundation, Inc., d/b/a Council on American-Islamic Relations & CAIR v. Asma Lori Haidri Saroya, a.k.a. Lori Saroya, Asma Saroya, Lori Haidri, Lori Haidri-Saroya, & LH*, Case No. 21-cv-01267 (SRN/TNL), because compliance would subject CAIR-Ohio to an undue burden, intrude upon privileged and confidential information, expose CAIR-Ohio and its supporters to harassment, and inflict a scope of discovery grossly disproportionate to Saroya's needs. A true and accurate copy of the subpoena is attached hereto as Exhibit 1, while a description of the burden, privileges, confidentiality, harassment, and proportionality is provided in both the Memorandum in Support of this motion and the Declaration, attached as Exhibit 2, from the CAIR-Ohio Treasurer and its attachments.

# MEMORANDUM IN SUPPORT OF NON-PARTY CAIR-OHIO'S MOTION TO QUASH DEFENDANT'S SUBPOENA *DUCES TECUM*

## I. Background

The underlying litigation centers on repeated public statements, typically on social media, by Saroya denouncing CAIR for a multitude of sins, ranging from owing her money, through seeking to intimidate her, to tolerating sexism and racism. Even though CAIR commenced this litigation, Soraya has now served a subpoena *duces tecum* on non-party CAIR-Ohio.[1]

The place designated for CAIR-Ohio to produce voluminous documentation is Attorney Services of NE Ohio, LLC, 221 Springside Drive, Akron, OH 44333. Under Fed.R.Civ.P. 45, this Court is the court for the district where compliance is required and the forum for resolving a motion to quash a subpoena ministerially issued at the request of Saroya's attorneys by the Minnesota court in the underlying action.

Saroya headed CAIR-Minnesota from 2007 through 2014 and then served as CAIR's National Chapter Development Director and Board Member during the period from 2016 to 2018. The underlying diversity litigation was commenced by CAIR and alleges four counts: (1) defamation; (2) defamation *per se*; (3) tortious interference with business relationships; and (4) misappropriation of confidential information.

## II. Non-party Status of CAIR-Ohio

CAIR-Ohio is a separate legal entity from CAIR. CAIR-Ohio is registered, and in good standing, as a nonprofit charitable organization with the Office of the Ohio Attorney General,

---

[1] The subpoena *duces tecum* was served on September 23, 2021, and the parties agreed to extend until November 15, 2021, CAIR-Ohio's response.

https://charitableregistration.ohioattorneygeneral.gov/Charities/Research-Charities.aspx. *See El-Hosseiny Dec.* ¶6.[2]

In contrast, CAIR is a District of Columbia non-profit corporation that has registered and trademarked the logo and name CAIR with the United States Patent and Trademark office, https://tsdr.uspto.gov/#caseNumber=88359909&caseType=SERIAL_NO&searchType=statusSearch. *El-Hosseiny Dec.* ¶7.

CAIR-Ohio is *a licensee* of CAIR. In the underlying action, Saroya has argued that on its website CAIR refers to its Chapters across the United States and has declared that CAIR is actively engaged with operating its chapters. As to CAIR-Ohio, its "employment practices, budgets, and finances have been controlled solely by CAIR-Ohio with no interference from CAIR," and it is controlled and managed solely by local and state board of directors of CAIR-Ohio." *El-Hosseiny Dec.* ¶¶10-11. Saroya has not suggested, moreover, that the chapters control CAIR.

First, the licensing agreement and registration with the Ohio Attorney General – CAIR is not so registered – establishes that CAIR-Ohio is a separate legal entity.[3] Second, in his Declaration, CAIR-Ohio's Treasurer expressly denies that CAIR governs or interferes with CAIR-Ohio's operations. *El-Hosseiny Dec.* ¶¶10-11. Third, the Complaint in the underlying action reproduces and incorporates Saroya's social media and other communications, yet, apart from the undeveloped fact of her sending a single communication to CAIR-Ohio, *none of them* refer to CAIR-Ohio or its employees. *Id.* at ¶26.[4] Fourth, CAIR-Ohio had nothing to do with drafting or

---

[2] Under R.C. Ch. 1716, charitable organizations must be registered with, and are regulated by, the Ohio Attorney General. *See, e.g., Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1478 (6th Cir. 1995).

[3] For example, recently Babcock & Wilcox signed an exclusive global licensing agreement on chemical looping technology with the Ohio State Innovation Foundation, a not-for-profit entity managing intellectual property developed by The Ohio State University, but B&W remains a separate legal entity from OSU.

[4] *See also El-Hussainy Dec.* ¶46 ("Employees of CAIR-Ohio did not regularly interact with Defendant Saroya during her tenure at CAIR.").

bringing the underlying action. *Id.* at ¶¶23-24. Fifth, CAIR-Ohio has not alleged that Saroya engaged in misconduct when she was employed by CAIR. *Id.* at ¶22.[5] Sixth, CAIR-Ohio has no claim for damages from Saroya's social media postings or other statements. *Id.* at ¶25.[6]

### III. Saroya's Subpoena *Duces Tecum* Is Remarkably Overbroad, Intrusive, and Unduly Burdensome on CAIR-Ohio.

Saroya has made 27 substantive requests for production, prefaced by instructions and definitions, in her subpoena *duces tecum*. The definitions expand the breadth at every turn, a dynamic captured by the preface -- "Notwithstanding any definition below, each word, term, or phrase used in the Request is intended to have the broadest possible meaning." – and confirmed by the last definition: "If the requested documents are maintained in a file, the file folder is included in the request for production of those documents." The inherently broad terms "concerning"; "relate"; and "relating to" are further defined to be boundaryless.

For example, the first Request sought "[a]ll documents referring or relating to Saroya, or in any way concerning Saroya, by whatever name"; the second for "[a]ll documents referring to or relating to or reflecting or constituting communications between Saroya or any of Your officers, employees or directors, past or present"; and the third the same except without the "between" phrase. Only one Request had a specific time period; the default time period is provided by Instruction No. 6, "Unless otherwise stated, these Requests are for the period from 2011 to the present." ***Thus, ten years' worth of documents have been subpoenaed.***

---

[5] A comprehensive search must apparently still be made to comply with Request No. 4: "All documents referring to or relating to or reflecting or constituting evidence that Saroya has ever engaged in 'harassment' or "abusive' conduct of any kind." Notably, Saroya was never an employee of CAIR-Ohio, and Saroya's argument that CAIR reaches into the internal operations of "Chapters" does not stretch to insinuate that "Chapters" control CAIR.

[6] A comprehensive search must apparently still be made to comply with Request No.5: "All documents referring or relating to or reflecting or constituting evidence that statements by Saroya have adversely affected Your [defined as CAIR-Ohio] or CAIR's fundraising or revenue."

CAIR-Ohio is not a corporation staffed with informational technology experts. Most of its documents are not even "stored in a manner susceptible to computer search and retrieval nor otherwise indexed in any meaningful way or inventoried; consequently, compliance with Defendant's subpoena *duces tecum* would require searching by hand, document by document." *El-Hosseiny Dec.* ¶14. CAIR-Ohio's Treasurer estimates that compliance would necessitate hiring "at least three employees or contractors to go through boxes and cabinets of documents" for three or more weeks. *Id.* at ¶¶14; 17 (three offices and a storage unit). Across its three Ohio officers, CAIR-Ohio has a total of 13 employees, "none of whom has a full-time information technology or computer operator designation or duties." *Id.* at ¶15.

CAIR-Ohio's word processing system may, however, be searched, and the staff attempted to search using three separate key words -- "Asma," "Lori," and "Saroya" – and did not locate any documents. *El-Hosseiny Dec.* ¶19. Basically, the search hit a dry well. CAIR has access to all work emails used by CAIR-Ohio staff as the emails are on a server run, managed, and controlled by CAIR. Additionally, CAIR-Ohio staff are also on various list serves which are run, controlled, and managed by CAIR and these list serves have potentially thousands of emails which mention Defendant. It would be very burdensome and time-consuming for non-party CAIR-Ohio's staff to find relevant emails especially when considering the fact that the party to this lawsuit, CAIR, is the host and has access to all these emails.

Request No. 6 seeks "[a]ll documents referring to or reflecting donations, gifts, or grants to You." As its full name indicates, the mission of CAIR-Ohio is: "Protecting Civil Rights. Fighting Bigotry. Promoting Tolerance." *El-Hosseiny Dec.* ¶4. "The three primary areas of CAIR-Ohio activities are providing legal services to defend, represent, and educate the Ohio Muslim

community; outreach and education throughout Ohio communities; and non-partisan political activism mobilizing the Ohio Muslim community." *Id.* at ¶5.

CAIR-Ohio has endured attacks for protecting the right of Muslims in Ohio. The Treasurer "has observed the effects of political polarization in Ohio, particularly characterizing Muslim-Americans as enemies of the United States, terrorists, and/or untrustworthy." *Id.* at ¶28. He described the specific mistreatment CAIR-Ohio has suffered:

> CAIR-Ohio offices have been under threat and harassment for over two decades. CAIR-Ohio offices routinely get hostile, harassing, and threatening phone calls and letters. In 2014, an intruder entered CAIR-Ohio's Columbus office and accosted its employees before law enforcement arrived at the office. CAIR-Ohio organized self-defense and active shooter trainings for several Muslim communities in Central Ohio in 2017 and 2019 including assessments of its own office vulnerabilities. On July 4, 2020, CAIR-Ohio received an Islamophobic and anti-Arab threat which also included specific threats of sexual violence against two of its female staffers, and those were reported to law enforcement. In 2021, CAIR-Ohio moved its Columbus office to a new location. In light of the continued harassment, CAIR-Ohio in October of 2021 retained the Franklin County Sheriff's Office and a private security firm to conduct a detailed security vulnerability assessment of its new office to upgrade its security preparedness.

*Id.* at ¶28.

"CAIR-Ohio maintains the anonymity of its contributors to the maximum extent permitted by law, largely because of the political polarization and the way it chills contributors." *Id.* at ¶29. Production would smash that anonymity, be likely to expose donators to retaliation, and be viewed by putative donors as posing such a risk. This past term, the United States Supreme Court reaffirmed First Amendment protection in such situations.

California had required that charitable organizations "disclose to the state Attorney General's Office the identities of their major donors." *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2379 (2021). Organizations "alleged that disclosure of their Schedule Bs would

make their donors less likely to contribute and would subject them to the risk of reprisals." *Id.* at 2380. Quoting from *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958), the Court, 141 S.Ct. at 2382, stated: "We have also noted that '[i]t is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action.'"

Recognizing that "*NAACP v. Alabama* involved this chilling effect in its starkest form," the Court proceeded to declare California's requirement facially unconstitutional based on the type of threats and harassment CAIR-Ohio has received. *Id.* at 2382, 2388 (recognizing that Googling and similar searches can lead to residential and other sensitive information). The critical point was the recognition in *NAACP v. Alabama*, 357 U.S. at 462, of "the vital relationship between freedom to associate and privacy in one's associations." Indeed, near the ending of its opinion, the Court, quoting from *NAACP v. Button*, 371 U.S. 415, 433 (1963), stated: "The risk of a chilling effect on association is enough, '[b]ecause First Amendment freedoms need breathing space to survive.'"

The Court seemingly anticipated the type of response Saroya will make by her invoking the protective order in the underlying case. Quoting from *Shelton v. Tucker*, 364 U.S. 479, 386 (1960), the Court, 141 S.Ct. at 2388, explained: "Our cases have said that disclosure requirements can chill association '[e]ven if there [is] no disclosure to the general public.'" The Court emphasized that "[e]xacting scrutiny is triggered by 'state action which *may* have the effect of curtailing the freedom to associate,' and by the '*possible* deterrent effect' of disclosure." *Id.* (citing with emphasis added *NAACP v. Alabama*, 357 U.S., at 460–61).

To bring home its holding, *Bonta*, 141 S.Ct. at 2388, appreciated "[t]he gravity of the privacy concerns" by citing *amici curiae* briefs, including "from the Council on American-Islamic Relations [CAIR]." The same conclusion the Court then reached applies to Saroya's subpoena

*duces tecum*: "The deterrent effect feared by these organizations is real and pervasive, even if their concerns are not shared by every single charity operating or raising funds in California." *Id.* Furthermore, it must be emphasized again that non-party CAIR-Ohio has no claim for damages or loss of donors or organization detriment from Saroya's social media postings or other statements. *El-Hosseiny Decl.* ¶25.

Saroya's Requests Nos. 7-12, 24 seek "[a]ll documents referring or relating to or reflecting or constituting" all claims or allegations made against CAIR-Ohio, including those by present or former employees and confidentiality or non-disclosure agreements between CAIR-Ohio and those present or former employees." Production would involve "employee personnel files, records or references to discipline, and confidential, private information." *El-Hosseiny Decl.* ¶34.

Requests Nos. 13-16, 21-23 seek "[a]ll documents referring or relating to" named individuals, yet, with one exception, none was "employed by CAIR-Ohio or involved in any non-trivial way with the activities of CAIR-Ohio." *El-Hosseiny Decl.* ¶36.

Request No. 17 sought "[a]ll documents referring or relating to or constituting consulting reports, internal or external investigative reports, or other reviews relating in any way to Your management or Your handling of claims or grievances." Even apart from any self-critical analysis privilege, Saroya's request has barely arguable relevance while seeking ten years' worth of documents about CAIR-Ohio's management and claims or grievances. To reiterate, CAIR has sued Saroya, and CAIR-Ohio is a licensee, not a co-conspirator. The Complaint against Saroya by CAIR which details Saroya's many denouncements of CAIR in her social media posts and statements, does not consist of a single post or statement targeting CAIR-Ohio.

Request No. 18 demanded production of "[a]ll documents referring or relating to or constituting the testimony, whether by affidavit, deposition or otherwise of any of Your officers

or employees in any judicial or administrative proceeding." Even apart from any protective orders that sought to limit use of such testimony to the specific proceeding, Saroya's request is virtually a dictionary definition of a fishing expedition. Proceedings ranging from unemployment compensation and discrimination or retaliation claims through tax, landlord-tenant, and premises liability to every other kind for the past ten years are sought. As before, Saroya has not posted on social media or made a statement alleging CAIR-Ohio mistreated her during her employment with CAIR.

Requests Nos. 19 and 20 seek "[a]ll documents referring or relating to regular meetings or conference calls between You, or any of Your officers or employees, and CAIR's Executive Director, CAIR chapter officials, or CAIR senior staff" and, in the one Request with a 2018-19 timeframe, rather than for ten years, "[a]ll documents referring or relating to or reflecting the work of any committee" established "to evaluate CAIR's finances and related matters." The scope is breathtaking: conference calls with CAIR senior staff occur frequently, cover a wide range of topics, and are seldom documented, though references or documents relating to them are natural. Whatever relevance Saroya claims is eclipsed by the undue burden, particularly in light of the largely futile searches for any variation of her name.

Request No. 24 seeks "[a]ll documents referring or relating to or reflecting or constituting communications between You, or any of your officers or employees, and any officer, director or employee of any CAIR chapter or affiliate regarding allegations of religious, gender or sexual discrimination, sexual harassment or assault or retaliation." The breadth ignores the duty of a party to show that she and her proposed comparators were similar in all relevant respects, and that he and his proposed comparators engaged in acts of comparable seriousness." *Bobo v. United Parcel*

*Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012). The disproportion is obvious: Saroya was never employed by CAIR-Ohio, let alone supervised by CAIR-Ohio managers.

Requests Nos. 25 and 26 seeks "[a]ll documents referring or relating to or reflecting or constituting tax filings of any kind by or on behalf of You, including all schedules and amendments" and those on "compensation paid to Your officers or directors." CAIR-Ohio treats its tax filings, apart from the 990 filing with the IRS that is publicly available, as confidential and trade secrets. *El-Hosseiny Decl.* ¶38. Federal courts generally resist discovery of tax returns. *See, e.g., Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74 (7th Cir. 1992); *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975).

Request No. 27 seeks "[a]ll documents referring or relating to or reflecting or constituting communications relating to the practice of law or the purported practice of law, or the provision of legal services or the purported provision of legal services, by Morris Days, Roman Iqbal, Danette Zachary-Mask and Lena Masri." CAIR-Ohio has never had any involvement with Days and barely any involvement with Zachary-Mask, while Iqbal is the Executive Director and Legal Director and Masri fills a similar legal role for CAIR. *El-Hosseiny Decl.* ¶¶41-44 (Days and Zachary-Mask were never employed or supervised by CAIR-Ohio and even minor interactions with Zachary-Mask did not involve Saroya). Every single case CAIR-Ohio has brought or defended and most of its administrative docket for the past ten years are encompassed by Request No. 27 and the entire file is sought, regardless of attorney-client communication or work product, for each. Yet, "[n]one of CAIR-Ohio's attorneys practice of law or provision of legal services has involved in any non-trivial way Defendant Saroya," *Id.* at ¶47, and "[c]omplying with Request No. 27 would require production of attorney-client communications and/or work product." *Id.* at ¶48.

## IV. Rule 45 Empowers this Court to both Quash the Subpoena *Duces Tecum* and Award CAIR-Ohio Its Attorneys' Fees and Costs.

Fed.R.Civ.P. 45(d)(3)(A) requires a subpoena to be quashed by "the court for the district where compliance is required" when it either "(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed.R.Civ.P. 45(d)(3)(B)(i) permits a subpoena to be quashed if production results in "disclosing a trade secret or other confidential research, development, or commercial information." The undue burden analysis is guided by the proportionality standard under Fed.R.Civ.P. 26, though "a subpoena issued against a nonparty" involves a "more demanding variant of the proportionality analysis." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir.), *cert. denied*, 140 S.Ct. 672 (2019). "When discovery is sought from nonparties, however, its scope must be limited even more." *Id.* Such third parties "should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery." *Id.*

In the balancing, "courts should consider not just the relevance of information sought, but the requesting party's need for it. The information sought must likely (not just theoretically) have marginal benefit in litigating important issues. . . . Courts should also consider what information is available to the requesting party from other sources. To that end, the requesting party should be able to explain why it cannot obtain the same information, or comparable information that would also satisfy its needs, from one of the parties to the litigation[.]" *Id.* at 189-90 (citations and footnotes omitted). Beyond "the dollars-and-cents costs associated with a large and demanding document production" are "cognizable burdens" such as "invading privacy or confidentiality interests." *Id.* Personnel documents are especially sensitive in this sense. *Onwuka v. Federal Express Corp.*, 178 F.R.D. 508, 516-17 (D. Minn. 1997) ("the personnel files of an entire class of

employees should not be produced, even in an employment discrimination proceeding, absent a compelling showing of relevance").

The bottom line is that, "even if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (quotation omitted). Thus, "subpoenas issued under Rule 45 are subject to the same "constraints that apply to all of the other methods of formal discovery.'" *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 236–37 (D. Minn. 2013) (quoting *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 177 F.R.D. 443, 443 (D.Minn.1997)). *Accord Cook v. Howard*, 484 Fed.Appx. 805, 812 & n.7 (4th Cir. 2012) (*per curiam*) ("This ground encompasses situations where the subpoena seeks information irrelevant to the case or that would require a non-party to incur excessive expenditure of time or money[.]").

In the Sixth Circuit, undue burden imposed by discovery is assessed on a case-by-case basis, "considering such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *In re: Modern Plastics Corporation*, 890 F.3d 244, 251 (6th Cir. 2018) (internal quotation omitted). While discovery is liberal, the "desire to allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991). Overbroad requests that are unduly burdensome to produce are improper. *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) ("Although a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff

be permitted 'to "go fishing" and a trial court retains discretion to determine that a discovery request is too broad and oppressive.'") (citation omitted).

Rule 45(d)(1) imposes a duty on Saroya and her attorneys: they "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Subpoenaing ten years' worth of documents is unreasonable given CAIR-Ohio's noninvolvement in the underlying litigation, its records maintenance, and its small staff. *See, e.g., Dakota Energy Coop., Inc. v. E. River Elec. Power Coop., Inc.*, No. 4:20-CV-04192-LLP, 2021 WL 3862131, at *4 (D.S.D. Aug. 30, 2021) ("[T]he court notes that the discovery requested would cover, at most, a matter of a few months. Dakota Energy is not asking for years' worth of documents as to communications between third parties and East River and Basin."). The remarkable breadth of the requests is also unreasonable: "Broad, permissible discovery does not include requests for 'all documents' that 'relate in any way' to a complaint. *See, e.g., Doe v. Nebraska*, 788 F. Supp. 2d 975, 982 (D. Neb. 2011) (denying motion to compel answers to interrogatories that effectively sought identification of 'all documents related in any way to this case' as 'a fishing expedition')." *JMIR Marquette Hotel LLC v. Cty. of Hennepin*, No. 27-CV-19-5739, 2021 WL 1288720, at *7 (Minn. Tax Apr. 2, 2021).

Courts regularly strike such requests. *See, e.g., WWP, Inc. v. Wounded Warriors Family Support, Inc.*, 628 F.3d 1032, 1038 (8th Cir. 2011)(upholding the district court's determination that a request seeking all donations during a lengthy period was overbroad); *Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 50 (D.N.J. 1985). As explained in *Doe v. Nebraska*, 788 F. Supp. 2d 975, 982–83 (D. Neb. 2011), asking for "all" documents "that relate in any way" to allegations is "akin to asking the defendants to identify 'all documents related in any way to this case.'" Saroya's requests are not quite that broad, but they are facially excessive in the same way and the same

conclusion – "The unfettered nature of these requests appears to be a fishing expedition." *Id.* – applies. The blatant intrusion on privileged or confidential areas is similarly indefensible.

Rule 45(d)(1) mandates awarding fees and expenses: "The court for the district where compliance is required must enforce this duty [of taking reasonable steps] and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply." CAIR-Ohio is by all accounts unrelated to the underlying dispute between CAIR and Saroya. As a licensee, CAIR-Ohio is a non-party, and, as a factual matter, its involvement in any way, shape, or form with Saroya has been less then peripheral. Her silence about CAIR-Ohio in all of her noisy denunciations of CAIR is telling. No sufficient justification exists for pulling CAIR-Ohio into the underlying dispute, inflicting an undue burden on it, and intruding on privileged or confidential information.

## V. Conclusion

For the foregoing reasons, Saroya's subpoena *duces tecum* should be quashed and the fees and costs it incurred awarded.

Respectfully submitted,

By: _____
John S. Marshall (0015160)
*(jmarshall@marshallforman.com)*
Edward R. Forman (0076651)
*(eforman@marshallforman.com)*
Samuel M. Schlein (0092194)
*(sschlein@marshallforman.com)*
Helen M. Robinson (0097070)
*(hrobinson@marshallforman.com)*
Madeline J. Rettig (0098816)
*(mrettig@marshallforman.com)*
MARSHALL AND FORMAN LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296

**OF COUNSEL:**
Louis A. Jacobs (002101)
*(LAJOhio@aol.com)*
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (510) 250-9007

conclusion – "The unfettered nature of these requests appears to be a fishing expedition." *Id.* – applies. The blatant intrusion on privileged or confidential areas is similarly indefensible.

Rule 45(d)(1) mandates awarding fees and expenses: "The court for the district where compliance is required must enforce this duty [of taking reasonable steps] and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply." CAIR-Ohio is by all accounts unrelated to the underlying dispute between CAIR and Saroya. As a licensee, CAIR-Ohio is a non-party, and, as a factual matter, its involvement in any way, shape, or form with Saroya has been less then peripheral. Her silence about CAIR-Ohio in all of her noisy denunciations of CAIR is telling. No sufficient justification exists for pulling CAIR-Ohio into the underlying dispute, inflicting an undue burden on it, and intruding on privileged or confidential information.

## V.     Conclusion

For the foregoing reasons, Saroya's subpoena *duces tecum* should be quashed and the fees and costs it incurred awarded.

Respectfully submitted,

By: _____
John S. Marshall (0015160)
(jmarshall@marshallforman.com)
Edward R. Forman (0076651)
(eforman@marshallforman.com)
Samuel M. Schlein (0092194)
(sschlein@marshallforman.com)
Helen M. Robinson (0097070)
(hrobinson@marshallforman.com)
Madeline J. Rettig (0098816)
(mrettig@marshallforman.com)
MARSHALL AND FORMAN LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (510) 250-9007

(614) 463-9790
Fax (614) 463-9780

**CERTIFICATE OF SERVICE**

This is to certify that the foregoing was sent to the Clerk for filing this 16th day of November, 2021, via UPS and was served upon the following via email:

Alain Baudry  (*alain.baudry@saul.com*)

Steven Kerbaugh  (*steven.kerbaugh@saul.com*)

Jeffrey Robbbins  (*jeffrey.robbins@saul.com*)

Joseph Lipchitz  (*joseph.lipchitz@saul.com*)

Aaron Sampsel  (*Aaron@clawoffice.com*)

Carl Christianson  (*cmorgan@rubinfortunato.com*)

Michael Fortunato  (*mfortunato@rubinfortunato.com*)

By: _____
John S. Marshall (0015160)